IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| BRAD KEITH SIGMON,<br><br>                Plaintiff,<br><br>v.<br><br>BRYAN P. STIRLING, in his official capacity as the Director of the South Carolina Department of Corrections; and SOUTH CAROLINA DEPARTMENT OF CORRECTIONS,<br><br>                Defendants. | Civil Action No.: 3:21-cv-01651-rbh<br><br>**Defendants' Response to<br>Motion for Temporary Restraining Order<br>and Preliminary Injunction** |

Defendants Bryan P. Stirling, in his official capacity as the Director of the South Carolina Department of Corrections, and the South Carolina Department of Corrections ("SCDC"), and Governor Henry McMaster (collectively, "Defendants") submit this response to Brad Keith Sigmon's Motion for a Temporary Restraining Order and Preliminary Injunction.

**Introduction**

This is the fourth time in the last three weeks that Sigmon has asked a court to stop his pending execution, which is set for June 18, 2021. First, he sued in state circuit court, challenging the constitutionality of 2021 S.C. Acts No. 43, R-56, S. 200. *See* Compl., *Owens & Sigmon v. Stirling*, No. 2021-CP-40-2306 (S.C. Comm Pls. May 17, 2021). Then, he moved the S.C. Supreme Court to stay his notice of execution. *See* Mot. to Stay, *State v. Sigmon*, No. 2002-024388 (S.C. May 28, 2021). Next, he filed a stay motion and petition in the S.C. Supreme Court's original jurisdiction, alleging ineffective assistance of counsel during his sentencing. *See Sigmon v. State*, No. 2021-_____ (S.C. June 3, 2021). (For what it's worth, the Fourth Circuit already considered and rejected that argument in Sigmon's federal habeas proceeding. *See Sigmon v. Stirling*, 956

F.3d 183, 193 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1094 (2021).) Now, Sigmon has brought this Eighth Amendment challenge to electrocution as a method of execution.

More than a decade ago, Justice Alito observed that death-penalty cases have for too long been "characterized" by "seemingly endless proceedings." *Baze v. Rees*, 553 U.S. 35, 69 (2008) (Alito, J., concurring). He might as well have been predicting Sigmon's flurry of last-minute lawsuits. Sigmon, who was convicted about "two decades ago," should not be permitted to delay his sentence "through lawsuit after lawsuit." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133–34 (2019). This denies the State and victims of their "important interest in the timely enforcement of a sentence." *Id.* at 1133. "The people of [South Carolina], the surviving victims of [Sigmon's] crimes, and others like them deserve better." *Id.* at 1134.

This latest lawsuit is no reason to stop Sigmon's scheduled execution. First, his challenge here is duplicative of his state circuit court lawsuit, as that lawsuit effectively requires him to show that electrocution is cruel and unusual. Second, given settled U.S. Supreme Court precedent, Sigmon is unlikely to be able to make that showing. The Court should therefore deny the motion, as the Court gives effect to the Supreme Court's admonition that "last-minute stays should be the *extreme exception*, not the norm" and "police[s] carefully against attempts to use such challenges as tools to interpose unjustified delay." *Id.* (emphasis added).

## **Background**

Brad Keith Sigmon's girlfriend of three years ended their relationship in 2001. Upset, Sigmon plotted his revenge. On April 26, 2001, he went to the house of his ex-girlfriend's parents and beat her parents to death with a baseball bat (hitting them multiple times because they were "still moving"). He then took a gun from the house and waited for his ex-girlfriend to return. When she did, Sigmon kidnapped her at gunpoint and forced her into his car. She was ultimately able to

jump out of the car. As she fled, Sigmon shot her. She nevertheless managed to escape and survived.[1]

A jury convicted Sigmon of two counts of murder and recommended the death penalty. The S.C. Supreme Court affirmed the convictions and sentence. *See State v. Sigmon*, 366 S.C. 552, 623 S.E.2d 648 (2005). It affirmed the sentence again on Sigmon's request for postconviction relief. *See State v. Sigmon*, 403 S.C. 120, 742 S.E.2d 394 (2013). And the federal courts have rejected his habeas claims. *See Sigmon*, 956 F.3d 183, *cert denied*, 141 S. Ct. 1094.

The S.C. Supreme Court issued an execution notice for Sigmon for June 18, 2021. *See* Execution Notice, *State v. Sigmon*, No. 2002-024388 (S.C. May 27, 2021). As noted in the Introduction, Sigmon has sought relief in the past few weeks from multiple courts. This particular case is a facial challenge to the constitutionality of electrocution as a method of execution.

## Legal Standard

"A preliminary injunction is an extraordinary and drastic remedy" and "is never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (internal quotation mark omitted). A plaintiff must show four elements to obtain a preliminary injunction: (1) likelihood of success on the merits, (2) irreparable harm, (3) the balance of the hardship tips in his favor, and (4) an injunction is in the public interest. *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

---

1. Freddie Eugene Owens, who has moved to intervene, robbed a convenience store in Greenville around 4:00 AM on November 1, 1997. The clerk (a single mother of three children who worked multiple jobs) had only $37 in the register. When she could not open the safe, Owens shot her in the head. Owens was convicted of murder and sentenced to death. Between his conviction and the sentencing phase, Owens killed another inmate, beating the inmate's head against the wall, choking him, and stabbing him in the eye with a pen. Like Sigmon, Owens has exhausted his direct and collateral appeals. *See Owens v. Stirling*, 967 F.3d 396, 426 (4th Cir. 2020), *cert. denied*, ___ S. Ct. ___, No. 20-975, 2021 WL 1520801 (U.S. Apr. 19, 2021).

**Argument**

I.   **Sigmon's state circuit court lawsuit warrants abstaining in this lawsuit.**

Generally, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them. *Colo. River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976). There are, however, exceptions to this rule. Two of those exceptions apply here based on the state circuit court case Sigmon filed.[2]

A.   *Colorado River* **applies because the cases are parallel.**

The *Colorado River* doctrine applies when parallel suits are pending in state and federal court, so that courts may "avoid duplicative litigation." *Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 232 (4th Cir. 2000); *see also Colo. River*, 424 U.S. at 817–19. Cases are parallel—and thus federal courts should abstain—whenever "substantially the same parties litigate substantially the same issues in different forums." *Al-Abood*, 217 F.3d at 232.

Here, there can be no dispute the same parties are involved. Sigmon is a plaintiff both here and in the state circuit court case. Director Stirling and SCDC are defendants in both cases. And now, Freddie Owens (the other plaintiff in the state circuit court case) and the Governor have moved to intervene here, creating a perfect overlap in the parties.

That leaves only the question of whether substantially the same issues are being litigated. At first glance, it may appear not. The state circuit court case challenges the constitutionality of Act 43. This case is a constitutional challenge under the Eighth Amendment to electrocution as a

---

2.   Nothing in either *Colorado River* or *Younger* requires that a plaintiff be *successful* in the state court action for abstention to apply. Rather, the plaintiff must merely have raised (or have the opportunity to raise) the same issues that are raised in the federal case. Thus, the fact that the state circuit court may deny the preliminary injunction motion is irrelevant to this analysis.

4

method of execution. But such a superficial analysis is insufficient. Digging deeper, it is clear that both cases involve a challenge to the alleged cruelty of electrocution.

One of Sigmon's challenges in the state circuit court case is an *ex post facto* claim to Act 43. In short, Sigmon contends that lethal injection is the most humane form of execution, and electrocution is "barbaric." Compl. ¶ 54, *Owens & Sigmon v. Stirling*, No. 2021-CP-40-2306 (S.C. Comm Pls. May 17, 2021). Thus (according to Sigmon), executing him by electrocution rather than lethal injection unconstitutionally increases his punishment. *See* U.S. Const. art. I, § 10, cl. 1; *Calder v. Bull*, 3 U.S. 386, 390 (1798) (Chase, J.) (defining an *ex post facto* law).

To prevail on this claim, Sigmon must show that his punishment has increased, not simply that his punishment will be carried out by a different method. Thus, under U.S. Supreme Court precedent, Sigmon "must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew*, 139 S. Ct. at 1125. The U.S. Supreme Court has given States this deference because courts are "not authorize[d] . . . to serve as boards of inquiry charged with determining best practices for executions." *Bucklew*, 139 S. Ct. at 1125. Moreover, courts must not become "embroil[ed]" in "ongoing scientific controversies beyond their expertise" about whether one method is slightly less painful than another.[3] *Baze*, 553 U.S. at 51 (plurality opinion).

---

3.     At the hearing in state circuit court, Sigmon balked at this standard, contending any additional amount of pain warrants finding an *ex post facto* violation. No case law supports such a conclusion. And for good reason. Such a standard would force courts into deciding issues about which the U.S. Supreme Court has recognized courts lack sufficient expertise. The metaphorical anchor for the *ex post facto* analysis of whether the punishment was increased (*i.e.*, whether it is more than death) is the Eighth Amendment, which bans punishments that intend to cause pain beyond what is necessary to carry out a death sentence. Otherwise, a sentence of death is a sentence of death, no matter the method used to carry it out. *See, e.g.*, *Poland v. Stewart*, 117 F.3d 1094, 1105 (9th Cir. 1997) ("[T]he sentence was death, and that sentence remains in place. The change

Put another way, Sigmon will have to show in the state circuit court case that electrocution is unconstitutionally cruel and unusual. Sigmon has not explicitly made that claim in the state circuit court case, but he must make that showing to prevail there. Otherwise, he has no plausible argument that his punishment has been increased. After all, in that situation, Sigmon would still be facing the same punishment of execution. There can be a successful *ex post facto* argument only if electrocution is unconstitutionally cruel.

The state circuit court case thus raises implicitly the very issue that this case raises explicitly: the constitutionality of electrocution under the Cruel and Unusual Punishments Clause. Both cases will involve substantially the same arguments by the some or all of the same parties and require the same analysis of the same U.S. Supreme Court decisions by the courts.

Because the same parties are litigating the same issues, these cases are parallel, and *Colorado River* applies. This Court should therefore abstain from considering Sigmon's constitutional challenge here.

### B. *Younger* applies because the state circuit court action involves important state interests while still allowing Sigmon to pursue his claim about electrocution.

The *Younger* doctrine requires abstention in proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013); *see also Younger v. Harris*, 401 U.S. 37 (1971). As the Fourth Circuit has framed the analysis, the doctrine applies whenever "(1) an ongoing state judicial proceeding, instituted

---

in method does not make the sentence more burdensome and so does not violate the Ex Post Facto Clause."); *Montana v. Fitzpatrick*, 684 P.2d 1112, 1113 (Mont. 1984) ("Death by lethal injection is not a legislatively created punishment. The punishment is the sentence of death."). A change in the method is a procedural change, and procedural changes are not *ex post facto* problems. *See Dobbert v. Florida*, 432 U.S. 282, 294 (1977) (holding in a murder case involving a change to how a death sentence could be imposed, "there was no change in the quantum of punishment attached to the crime" after the procedural change).

prior to any substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides an adequate opportunity for the plaintiff to raise the federal constitutional claim advanced in the federal lawsuit." *Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008).

This case meets all three elements. *First*, there is an ongoing state judicial proceeding, and it was filed before this lawsuit was. *See* Compl., *Owens & Sigmon v. Stirling*, No. 2021-CP-40-2306 (S.C. Comm Pls. May 17, 2021). That proceeding challenges the execution notice that the S.C. Supreme Court issued for Sigmon pursuant to S.C. Code Ann. § 17-25-370 by asking the circuit court to enjoin the Act that sets forth the new procedure the General Assembly enacted earlier this year to ensure that lawfully imposed death sentences may be carried out. *See* S.C. Code Ann. § 24-3-530 (setting forth the methods and procedures for carrying out death sentences).

*Second*, that state court proceeding raises important state interests. It specifically challenges the constitutionality of South Carolina law. A law, no less, that sets forth the procedures for carrying out a death sentence—one of the State's most solemn duties.

*Third*, Sigmon can raise his Eighth Amendment arguments about electrocution in the state court proceeding, and he has already indirectly done as much. The Eighth Amendment applies in that case, just as it does here. *See* U.S. Const. art. VI, cl. 2. As just discussed, *see supra* Part I.A., the state circuit court case involves the same U.S. Supreme Court decisions and arguments about whether electrocution is unconstitutionally cruel and unusual.

One other important consideration on this factor: Whether Sigmon pursues this argument about electrocution in state circuit court or this Court, he must ultimately seek to convince the U.S. Supreme Court that his argument is correct to prevail. *Cf.* 28 U.S.C. § 1254 (certiorari to federal circuit courts of appeal); *id.* § 1257 (certiorari to highest court of a state). The U.S. Supreme Court

has repeatedly rejected the argument that electrocution is cruel and unusual punishment. *See, e.g.*, *Louisiana v. Resweber*, 329 U.S. 459 (1947); *In re Kemmler*, 136 U.S. 436 (1890); *see also Poyner v. Murray*, No. 93-6052, 1993 WL 13119345, at *1–2 (4th Cir. Jan. 19, 1993) (Widener, J.) (collecting cases rejecting challenges to electrocution). Only the U.S. Supreme Court may overrule its decisions. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). Thus, if electrocution is ever held to violate the Eighth Amendment, only the U.S. Supreme Court may do so. Sigmon will have the opportunity to pursue his argument to the U.S. Supreme Court as equally from the state circuit court case as in this case. And in the process of potentially raising that issue to the U.S. Supreme Court through the state circuit case, Sigmon has already told argued to the S.C. Supreme Court that electrocution is "needless torture." Mot. to Stay 6, *State v. Sigmon*, No. 2002-024388 (S.C. May 28, 2021)

## II.     Sigmon is not likely to succeed on the merits.

Even if this Court were to consider the merits of Sigmon's claim, the Court should still deny injunctive relief because Sigmon is not likely to prevail on the merits.

The analysis of this factor must begin with this basic fact: For Sigmon to prevail, he would have to convince the U.S. Supreme Court to overrule its prior decisions holding that electrocution is not cruel and unusual punishment.[4] *See, e.g.*, *Resweber*, 329 U.S. 459. In fact, since the U.S. Supreme Court reinstated the death penalty in *Gregg v. Georgia*, 428 U.S. 153 (1976), the U.S. Supreme Court "has *never* invalidated a State's chosen procedure for carrying out a sentence of death as the infliction of cruel and unusual punishment." *Glossip v. Gross*, 576 U.S. 863, 869 (2015) (emphasis added). That is a significant hurdle to overcome, and it is reason enough to deny

---

4.     On this point, it is telling that all Sigmon can cite from the U.S. Supreme Court about electrocution is a dissent from the denial from certiorari. *See* Compl. ¶ 20 (citing *Glass v. Louisiana*, 471 U.S. 1080, 1087–88 (1985) (Brennen, J., dissenting from denial of certiorari)).

Sigmon's Motion. As noted above, the state case would still afford Sigmon the opportunity to seek a stay from the U.S. Supreme Court, and that would allow the High Court to decide whether this constitutional challenge might have enough merit to warrant a stay in view of longstanding precedent to the contrary.

> **A.     Sigmon is unlikely to show that lethal injection will significantly reduce a substantial risk of severe pain.**

Sigmon relies heavily on the U.S. Supreme Court's decision in *Baze* for his contention that lethal injection is the most humane method of execution. *See* Compl. ¶¶ 19, 83, ECF No. 1. He treats this assertion as uncontestable fact.

Hardly. A growing crowd of voices is arguing that lethal injection is especially painful, particularly compared to other methods. Most prominent among those voices is perhaps Justice Sotomayor. She has observed that lethal injection was adopted as "a more humane and palatable method of execution," but that in "cruel irony," lethal injection "may turn out to be our most cruel experiment yet." *Arthur v. Dunn*, 137 S. Ct. 725, 732–33 (2017) (Sotomayor, J., dissenting from denial of certiorari). In her dissent from the denial of certiorari in *Arthur*, Justice Sotomayor catalogued claims of lethal injections that supposedly caused pain. *See id.* at 733. She wanted the Supreme Court to take up the petitioner's claim that a firing squad would substantially reduce the risk of pain. *See id.* at 733–34. Less than a month ago, Justice Sotomayor echoed that call. *See Johnson v. Precythe*, 141 S. Ct. ___, No. 20-287, 2021 WL 2044683, at *4 (U.S. May 24, 2021) (Sotomayor, J., dissenting from denial of certiorari) (arguing that the Court should have heard a case alleging that firing squad was less painful than lethal injection).

Other Eighth Amendment challenges to lethal injection abound. *See, e.g.*, *Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015) (per curiam); *Gissendaner v. Comm'r, Ga. Dep't of Corr.*, 779 F.3d 1275 (11th Cir. 2015); *Raby v. Livingston*, 600 F.3d 552 (5th Cir. 2010); *Cooey v.*

9

*Strickland*, (6th Cir. 2009); *Emmett v. Johnson*, 532 F.3d 291 (4th Cir. 2008); *Morales v. Tilton*, 465 F. Supp. 2d 972 (N.D. Cal. 2006).

In fact, Sigmon has his own challenge to lethal injection. Sigmon sued Director Stirling and SCDC demanding information about the protocols for lethal injection, alleging that SCDC's method could cause a "painful and tortuous death." Compl. ¶ 37, *Sigmon v. Stirling*, No. 3:21-cv-278-RBH (D.S.C. Jan. 28, 2021), ECF No. 1. Some of Sigmon's lawyers have likewise sued Director Stirling and SCDC over access to lethal injection protocols so they can "consider an Eighth Amendment challenge" to those protocols.[5] Compl. Introduction, *Justice 360 v. Stirling*, No. 3:20-cv-3671-MGL (D.S.C. Oct. 19, 2020), ECF No. 1; *see also id.* ¶ 2 ("There are a variety of drugs that have been or could be used to carry out an execution by lethal injection, and each has specific risks and associated problems—risks that can be exacerbated when assessed in the context of a particular inmate's health and medical history."); *id.* ¶¶ 9, 11–13 (asserting that condemned inmates in other states "suffered a torturous death" or were subjected to a "botched execution" due to alleged issues with lethal injections); *id.* ¶ 26 ("Electrocution is making a comeback in several other states due to the persisting issues with lethal injection as a method of execution.").

In addition to these challenges by Sigmon and his counsel claiming that lethal injection is painful, there is growing evidence that other methods that were previously considered less humane than lethal injection might actually be more humane. When it comes to electrocution, one scholar has observed that, "[w]hen done correctly, death by electrocution is relatively quick and disfigurement is minimal." Louis J. Palmer, Jr., *The Death Penalty in the United States* 250 (2013).

---

5.  The lethal-injection protocol Sigmon claims should be used (pentobarbital) is not constitutionally required. The U.S. Supreme Court has approved of other drug protocols as well—including the drug midazolam that Sigmon's lawyers have implied should not be used. *Compare Glossip*, 576 U.S. at 867, *with* Compl. ¶¶ 9, 13, *Justice 360 v. Stirling*, No. 3:20-cv-3671 (D.S.C. Oct. 19, 2020), ECF No. 1.

To that point, Tennessee has carried out at least five executions by electrocution in the past few years, as inmates are *choosing* electrocution over lethal injection. *See* Travis Loller, *Tennessee Man Gets Electric Chair for Killing Fellow Inmate*, Associated Press (Feb. 21, 2021), https://tinyurl.com/kc74jsfs; *see also Miller v. Parker*, 909 F.3d 827 (6th Cir. 2018) (discussing another inmate who chose electrocution over lethal injection). In a Tennessee execution by electrocution in 2020, for example, the inmate's body stiffened and partially lifted out of the chair before he died less than a minute after the first jolt of electricity. *See* Loller, *supra*.

Ultimately, "some risk of pain is inherent in any method of execution." *Glossip*, 576 U.S. at 869. Therefore, "the Constitution does not require the avoidance of all risk of pain." *Id.* Any form of execution (indeed, any form of death) may involve some pain. Whatever pain electrocution may cause, Sigmon is unlikely to show that lethal injection will significantly reduce a substantial risk of severe pain as compared to electrocution.

### B. Sigmon is unlikely to show that lethal injection is readily available.

Sigmon contends that lethal injection by a single dose of pentobarbital is a readily available alternative, claiming that other jurisdictions have recently been able to obtain that drug and carry out executions. *See* Compl. ¶¶ 81–100, ECF No. 1. Although other jurisdictions may have had such success, South Carolina has not, despite repeated efforts.

In Sigmon's case, the S.C. Supreme Court asked Director Stirling to explain why lethal injection was not available. *See* Letter from D. Shearouse, *State v. Sigmon*, No. 2002-024388 (S.C. June 4, 2021). Director Stirling explained that SCDC been unable, despite numerous and diligent attempts, to acquire the drugs necessary, in useable form, to perform a lethal injection. SCDC, like many other departments of corrections across the nation, has been repeatedly told, in no uncertain terms, by manufacturers of the drugs needed for a lethal injection that they will not sell SCDC

11

such drugs. SCDC has also explored having a licensed pharmacy and pharmacist compound the drugs, but those efforts have also been unsuccessful. *See* Letter from Dir. Stirling, *State v. Sigmon*, No. 2002-024388 (S.C. June 8, 2021).

Moreover, Sigmon's arguments in this regard must be put in context. His counsel has opposed efforts to obtain the drugs necessary to carry out executions by lethal injection. Sigmon should be logically, if not legally, estopped from advancing this position.

### C. Sigmon is unlikely to prevail under the original meaning of the Cruel and Unusual Punishments Clause.

Sigmon tries to frame his claim under the evolving standards of decency test. *See, e.g.*, Compl. ¶¶ 3, 101–08. This test is *not* how the U.S. Supreme Court has recently approached cases challenging a method of execution. *See Bucklew*, 139 S. Ct. 1112; *Glossip*, 576 U.S. 863; *Baze*, 553 U.S. 35. The U.S. Supreme Court has begun focusing on the original meaning of the Cruel and Unusual Punishments Clause in method-of-execution cases. For example, in its most recent method-of-execution case, the Court rejected an argument because it was "inconsistent with the original and historical understanding of the Eighth Amendment." *Bucklew*, 139 S. Ct. at 1126–27.

In 1689, England enacted its bill of rights, which prohibited "cruel and unusual punishments." English Bill of Rights, cl. 10 (1689), https://tinyurl.com/5rce8xre. Various states eventually enacted such prohibitions as well. *See, e.g.*, Virginia Declaration of Rights, § 9 (June 12, 1776) ("That excessive bail ought not to be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."), https://tinyurl.com/ert444zc. Congress did the same in the Northwest Ordinance. *See* Northwest Ordinance of 1787, § 14, art. 2 (1787) ("no cruel or unusual punishments shall be inflicted").

When the Eighth Amendment was ratified using the same language as these other legal documents, "cruel" was understood to mean "pleased with hurting others," "savage," or

"unrelenting." *Bucklew*, 139 S. Ct. at 1123 (quoting 1 S. Johnson, *A Dictionary of the English Language* (4th ed. 1773)). "Unusual" referred to methods of execution that, even if not outlawed under English law, "had long fallen out of use." *Id.*; *see also* 4 William Blackstone, *Commentaries on the Laws of England* 370 (1769) ("by tacit consent," English law had stopped using methods of execution that were "torture or cruelty"). Thus, methods like the rack, the stake, the wheel, disemboweling, quartering, and public dissection were prohibited. *Bucklew*, 139 S. Ct. at 1123. These banned methods were ones that were "designed to inflict pain and suffering beyond that necessary to cause death." *Baze*, 553 U.S. at 96 (Thomas, J., concurring in the judgment). The prohibition on such punishments was known by "every schoolboy in America" during this time, Akhil Reed Amar, *The Bill of Rights* 87 (1998), and it was a point raised repeatedly by Antifederalists during the ratification debates, *see* Address and Reasons of Dissent of the Minority of the Convention of Pennsylvania to Their Constituents, *Pennsylvania Packet and Daily Advertiser* (Dec. 18, 1787), reprinted in *The Anti-Federalist* 207 (Murray Dry & Herbert J. Storing eds., 1985). The Eighth Amendment ensures that Congress—and now, the States, *see Jones v. Mississippi*, 141 S. Ct. 1307, 1314 (2021)—cannot enact such barbarous methods, *see Baze*, 553 U.S. at 96.

The Cruel and Unusual Punishments Clause therefore does not prohibit the death penalty. After all, capital punishment was used in the late 1700s. *See id.* at 1122. The Clause does, however, limit *how* the state may execute someone. *See Bucklew*, 139 S. Ct. at 1123. Electrocution does not violate the Cruel and Unusual Punishments Clause, as originally understood. Electrocution, of course, did not exist at the Founding. New York was the first state to adopt electrocution as a method of execution in 1888, seeking a more humane way to carry out death sentences. *See Baze*, 553 U.S. at 42. The Supreme Court did not accept the argument from the first person set to be

13

executed by that method that electrocution was cruel or unusual. *See In re Kemmler*, 136 U.S. 436 (1890). Nor did it accept the argument that electrocuting an inmate a second time after a failed execution was unconstitutional. *See Louisiana v. Resweber*, 329 U.S. 459 (1947). Because electrocution does not seek "to inflict pain and suffering beyond that necessary to cause death," *Baze*, 553 U.S. at 96, the Supreme Court is unlikely to hold that electrocution violates the Eighth Amendment, *see also Bucklew*, 139 S. Ct. at 1124 (explaining that a method of execution is constitutional if it was not "intended to be painful and the risk of pain involved was considered unfortunate but inevitable" (cleaned up)).

## Conclusion

For the foregoing reasons, the Court should deny the Motion for a Temporary Restraining Order and Preliminary Injunction.

Respectfully submitted,

s/Wm. Grayson Lambert
Thomas A. Limehouse, Jr. (Fed. Bar No. 12148)
*Chief Legal Counsel*
Wm. Grayson Lambert (Fed. Bar No. 11761)
*Senior Legal Counsel*
OFFICE OF THE GOVERNOR
South Carolina State House
1100 Gervais Street
Columbia, South Carolina 29201
(803) 734-2100
tlimehouse@governor.sc.gov
glambert@governor.sc.gov

*Counsel for Governor McMaster*

*and*

SMITH | ROBINSON

14

                s/ Daniel C. Plyler
                DANIEL C. PLYLER (Fed. Bar No. 9762)
                AUSTIN T. REED (Fed. Bar No. 13405)
                2530 Devine Street
                Columbia, SC 29205
                T: 803-254-5445
                F: 803-254-5007
                Daniel.Plyler@SmithRobinsonLaw.com
                Austin.Reed@SmithRobinsonLaw.com

*Counsel for Defendants Bryan P. Stirling and the South Carolina Department of Corrections*

June 8, 2021
Columbia, South Carolina

15