UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Brad Keith Sigmon and Freddie Eugene Owens, | Civil Action No.: 3:21-CV-01651-RBH |
| Plaintiffs, | |
| v. | **ORDER** |
| Bryan P. Stirling, in his official capacity as the Director of the South Carolina Department of Corrections, South Carolina Department of Corrections, and Henry McMaster, | |
| Defendants. | |

This matter is before the Court on Plaintiffs' [ECF Nos. 5 & 14] motions for temporary restraining order and preliminary injunction. Defendants Bryan P. Stirling, the South Carolina Department of Corrections, and Governor Henry McMaster have filed a response in opposition. [ECF No. 15]. The Court held a hearing on Plaintiffs' motions on June 9, 2021. For the reasons that follow, the Court denies Plaintiffs' motions for temporary restraining order and preliminary injunction.

**Factual and Procedural Background**

Plaintiff Brad Keith Sigmon is scheduled to be executed by electrocution on Friday, June 18, 2021. Plaintiff Freddie Eugene Owens is scheduled to be executed by electrocution on Friday, June 25, 2021. On June 3, 2021, Sigmon filed the instant lawsuit under 42 U.S.C. § 1983 claiming that electrocution violates his constitutional right to be free from cruel and unusual punishment.[1] On

---

[1] In recent weeks, in addition to the instant case, Sigmon and Owens have brought several challenges to their pending executions. First, Sigmon and Owens sued in state circuit court, challenging the constitutionality of 2021 S.C. Acts No. 43, R-56, S. 200. *See Compl., Owens & Sigmon v. Stirling*, No. 2021-CP-40-2306 (S.C. Comm Pls.

June 4, 2021, Owens, who asserts an identical claim, filed a motion to intervene in Sigmon's lawsuit. On June 8, 2021, the Court granted Owens's motion to intervene. Also on June 8, 2021, Governor Henry McMaster filed a motion to intervene, which the Court granted with no opposition from the other parties.

Plaintiffs Sigmon and Owens claim that "[b]y compelling [Sigmon and Owens] to die in

---

May 17, 2021). Then, Sigmon moved the S.C. Supreme Court to stay his notice of execution. *See* Mot. to Stay, *State v. Sigmon*, No. 2002-024388 (S.C. May 28, 2021). Next, Sigmon filed a stay motion and petition in the S.C. Supreme Court's original jurisdiction, alleging ineffective assistance of counsel during his sentencing. *See Sigmon v. State*, No. 2021-_____ (S.C. June 3, 2021). Sigmon previously pursued federal habeas proceedings. *See Sigmon v. Stirling*, 956 F.3d 183, 193 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1094 (2021)). Now, Sigmon and Owens have brought the instant Eighth Amendment challenge to electrocution as a method of execution in federal court.

With regard to the state circuit court action, Sigmon and Owens allege violations of (1) the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article I, Section 3 of the South Carolina Constitution, (2) the prohibitions on *ex post facto* punishment in Article I, Section 9, Clause 3 of the United States Constitution and Article I, Section 4 of the South Carolina Constitution, and (3) the non-delegation doctrine implicit in Article I, section 8 of the South Carolina Constitution. *See Owens & Sigmon v. Stirling*, No. 2021-CP-40-2306 (S.C. Comm Pls. filed May 17, 2021).

Due to the pending state circuit court lawsuit, Defendants argue the Court should abstain from this federal action under both *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and *Younger v. Harris*, 401 U.S. 37 (1971). ECF No. 15 at pp. 4-8. The Court disagrees.

*Colorado River* abstention must be applied "parsimoniously" and is available only in "exceptional circumstances." *vonRosenberg v. Lawrence*, 849 F.3d 163, 167 (4th Cir. 2017). "In deciding whether such exceptional circumstances exist, a court must first determine whether the federal and state actions are parallel. State and federal suits are parallel only if substantially the same parties litigate substantially the same issues in different forums. *Id*. at 168 (internal quotation marks omitted) (emphasis added). "Exceptional circumstances allowing for abstention under *Colorado River* do not exist when state and federal cases are not duplicative, but merely raise similar or overlapping issues." *Id*. at 169. Here, the instant federal action (alleging an Eighth Amendment claim under the federal constitution) is not parallel to the action pending in state court (alleging due process, ex post facto, and non-delegation claims under the federal and state constitutions). Thus, abstention under *Colorado River* is inappropriate.

*Younger* abstention is available only in three "exceptional circumstances": (1) "state criminal prosecutions," (2) "civil enforcement proceedings," and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73, 78 (2013) (internal quotation marks and ellipsis omitted); *see id.* at 78 ("We have not applied *Younger* outside these three 'exceptional' categories, and today hold . . . that they define *Younger's* scope."). None of these circumstances are present here. The state circuit court matter is not a criminal prosecution (it is pending in the Richland County Court of Common Pleas, not General Sessions), is not a civil enforcement proceeding within the meaning of *Younger*, and is not a civil proceeding involving an order uniquely in furtherance of a South Carolina court's ability to perform its judicial function. Notably, while Defendants cite *Robinson v. Thomas*, 855 F.3d 278 (4th Cir. 2017), that case involved *Younger* abstention in the context of "current [state] criminal prosecutions" with the petitioners making a double jeopardy argument via 28 U.S.C. § 2241 habeas petitions. *Id*. at 287. In short, *Younger* abstention is inappropriate.

It should be noted that on June 8, 2021, the state circuit court denied Sigmon and Owens's motion for temporary restraining order and preliminary injunction. On June 10, 2021, Sigmon and Owens appealed that decision to the South Carolina Supreme Court.

2

[Defendants'] century-old electric chair, Defendants subject [Sigmon and Owens] to a substantial risk of excruciating pain, terror, and certain bodily mutilation that contravenes evolving standards of decency, offends basic principles of human dignity, and violates the Eighth Amendment's prohibition on cruel and unusual punishment." [Complaint, ECF Nos. 1 & 13].  Plaintiffs further claim that "lethal injection is a readily available alternative that would significantly reduce the risk posed by the electric chair." *Id*.  In addition to a temporary restraining order and/or preliminary injunction,  Plaintiffs seek a declaration that electrocution is unconstitutional and a permanent injunction enjoining Defendants from electrocuting Plaintiffs to death. *Id*.

## **Applicable Legal Standards**

The court's authority to issue a preliminary injunction arises from Rule 65, but "it is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A party seeking a preliminary injunction must make a clear showing that the plaintiff is entitled to such relief. *Winter*, 555 U.S. at 22.  To obtain a preliminary injunction, a plaintiff must: (1) make a clear showing that he is likely to succeed on the merits; (2) make a clear showing that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) establish the balance of equities tips in his favor; and (4) establish that an injunction is in the public interest. *Id*. at 20; *The Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346–47 (4th Cir. 2009), *vacated on other grounds*, 559 U.S. 1089, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010).  A district court need not consider all four *Winter* factors if one is clearly absent. *See Henderson for Nat'l Lab. Rels. Bd. v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018).  The standard for obtaining a temporary restraining order is the same as a preliminary injunction. *Maages Auditorium v. Prince George's County, Md.*, 4 F. Supp. 3d 752, 760 n.1 (D. Md. 2014).

The Eighth Amendment to the United States Constitution, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments." *Glossip v. Gross*, 576 U.S. 863, 876 (2015).  While the Eighth Amendment does not prohibit capital punishment, it does prohibit methods of execution that are "cruel and unusual." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1123 (2019).  "[T]he punishment of death is not cruel, within the meaning of that word as used in the Constitution.  [Cruelty] implies . . . something inhuman and barbarous, something more than the mere extinguishment of life." *Bucklew*, 139 S. Ct. at 1124 (quoting *In re Kemmler*, 136 U.S. 436, 447 (1890)).  "[T]he Eighth Amendment does not guarantee a prisoner a painless death - something that . . . isn't guaranteed to many people, including most victims of capital crimes." *Id*.  Rather, the Eighth Amendment prohibits "long disused (unusual) forms of punishment that intensif[y] the sentence of death with a (cruel) 'superadd[ition]' of 'terror, pain, or disgrace.'" *Id*. (quoting *Baze v. Rees*, 553 U.S. 35, 48 (2008)).  As stated by the United States Supreme Court in *Bucklew*:

> *Baze* and *Glossip* recognized that the Eighth Amendment "does not demand the avoidance of all risk of pain in carrying out executions." *Baze*, 553 U.S. at 47.  To the contrary, the Constitution affords a "measure of deference to a State's choice of execution procedures" and does not authorize courts to serve as "boards of inquiry charged with determining 'best practices' for executions." *Id*. at 51–52, and nn. 2–3.  The Eighth Amendment does not come into play unless the risk of pain associated with the State's method is "substantial when compared to a known and available alternative." *Glossip*, 576 U.S. at 878; *see Baze*, 553 U.S. at 61.  Nor do *Baze* and *Glossip* suggest that traditionally accepted methods of execution—such as hanging, the firing squad, *electrocution*, and lethal injection—are necessarily rendered unconstitutional as soon as an arguably more humane method like lethal injection becomes available. There are, the Court recognized, many legitimate reasons why a State might choose, consistent with the Eighth Amendment, not to adopt a prisoner's preferred method of execution. *See, e.g., Glossip*, 576 U.S. 878-79 (a State can't be faulted

4

> for failing to use lethal injection drugs that it's unable to procure through good-faith efforts); *Baze*, 553 U.S. at 57 (a State has a legitimate interest in selecting a method it regards as "preserving the dignity of the procedure"); *id*., at 66 (Alito, J., concurring) (a State isn't required to modify its protocol in ways that would require the involvement of "persons whose professional ethics rules or traditions impede their participation").

*Bucklew*, 139 S. Ct. at 1125 (emphasis added).

To prevail on a claim that the State's chosen method of execution violates the Eighth Amendment, "a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Id*.; *Glossip*, 576 U.S. at 877-78. This standard governs "all Eighth Amendment method-of-execution claims." *Bucklew*, 139 S. Ct. at 1125.

### Discussion

Plaintiffs claim that South Carolina's chosen method of execution - electrocution - violates the Eighth Amendment's bar against "cruel and unusual punishments." Plaintiffs argue that electrocution creates a severe risk of pain and suffering and lethal injection is a readily available alternative that significantly reduces the risk of severe pain posed by the electric chair. Plaintiffs assert that Defendants should execute Plaintiffs with a single dose of pentobarbital consistent with the Federal Execution Protocol attached to Plaintiffs' complaints. *See* [Complaint, ECF Nos. 1 & 13, ¶¶ 85 & 86].

Despite Plaintiffs' arguments to the contrary, Plaintiffs have failed to make a *clear* showing that they are likely to succeed on the merits of their claim that electrocution is cruel and unusual under the Eighth Amendment. Legal precedent and the weight of legal authority are against them.

The United States Supreme Court has never held that a State's chosen method of execution qualifies as cruel and unusual. *See Bucklew*, 139 S. Ct. at 1124. As noted by Justice Gorsuch in *Bucklew*, in 1890 in *In re Kemmler*, the United States Supreme Court upheld a sentence of death by electrocution noting that electrocution was not "cruel" in the constitutional sense. *See id*. at 1123-24 (citing *Kemmler*, 136 U.S. at 447). In the years that followed, the Supreme Court has construed *Kemmler* as stating that electrocution is not cruel and unusual punishment under the Eighth Amendment. *See McClesky v. Kemp*, 481 U.S. 279, 299 (1987); *Ingraham v. Wright*, 430 U.S. 651, 667 (1977); *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). In 1947, the Supreme Court held in *Louisiana v. Resweber* 329 U.S. 459 (1947), that it was not cruel and unusual punishment to attempt a second execution by electrocution when the first failed because of mechanical problems with the electric chair. As the Supreme Court has noted, its "decisions remain binding precedent until [it] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality." *Hohn v. United States*, 524 U.S. 236, 252–53 (1998). The Supreme Court's decision in *In re Kemmler* and subsequent refusal to overrule it remains binding on this Court, and this Court lacks the authority to find otherwise. *See, e.g. Gray v. McAuliffe*, No. 3:16CV982-HEH, 2017 WL 102970, at *17 (E.D. Va. Jan. 10, 2017).

Multiple circuit courts of appeals have also rejected Eighth Amendment challenges to electrocution as a means of execution. *See, e.g. Miller v. Parker*, 909 F.3d 827, 830 (6th Cir. 2018); *Williams v. Bagley*, 380 F.3d 932, 965 (6th Cir. 2004); *Smith v. Mitchell*, 348 F.3d 177, 214 (6th Cir. 2003); *Buell v. Mitchell*, 274 F.3d 337, 370 (6th Cir. 2001) *Jones v. Whitley*, 938 F.2d 536 (5th Cir. 1991), *cert. denied*, 501 U.S. 1267 (1991); *Lindsey v. Smith*, 820 F.2d 1137, 1155 (11th Cir.1987) *cert. denied*, 495 U.S. 1059 (1989); *Poyner v. Murray*, No. 93-6052, 1993 WL 13119345

(4th Cir. 1993) (unpublished) (collecting cases).

This Court could end the analysis here. Plaintiffs's claims cannot survive against over 100 years of federal court precedent holding that electrocution does not amount to cruel and unusual punishment under the Eighth Amendment. For that reason, Plaintiffs are not entitled to an injunction.

Even if this Court were not constrained by an overwhelming weight of authority against Plaintiffs' claims, Plaintiffs still fail to make a *clear* showing that lethal injection (single dose pentobarbital) would significantly reduce a substantial risk of severe pain. As stated above, to prevail on a claim that the State's chosen method of execution violates the Eighth Amendment, "a prisoner must show a feasible and readily implemented alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt without a legitimate penological reason." *Bucklew*, 139 S. Ct. at 1125. Here, Plaintiffs claim that lethal injection by single dose pentobarbital would significantly reduce a substantial risk of severe pain posed by the electric chair. However, when compared to electrocution, lethal injection, whether by single dose pentobarbital or by a three-drug protocol, may present its own host of horrific results. *See, e.g. Arthur v. Dunn*, 137 S. Ct. 725, 732–33 (2017) (Sotomayor, J., dissenting from denial of certiorari).

In *Barr v. Lee*, plaintiffs brought an Eighth Amendment challenge to the Federal Execution Protocol - lethal injection by single dose pentobarbital - which, ironically, is the same method of execution that Plaintiffs seek in this case. 140 S. Ct. 2590, 2590-92 (2020). Plaintiffs in that case relied on "expert declarations suggesting that pentobarbital caused prisoners to experience 'flash pulmonary edema,' a form of respiratory distress that temporarily produces the sensations of

7

drowning or asphyxiation." *Lee*, 140 S. Ct. at 2591.  Although the United States Supreme Court ultimately vacated the district court's decision, the district court initially agreed with the plaintiffs' experts and granted the injunction finding that the plaintiffs were likely to succeed on the merits of their claim that single dose pentobarbital was cruel and unusual under the Eighth Amendment. *See Matter of Fed. Bureau of Prisons' Execution Protocol Cases*, 471 F. Supp. 3d 209, 222–23 (D.D.C.), *vacated sub nom. Barr v. Lee*, 140 S. Ct. 2590 (2020).

In *Zink v. Lombardi*, the plaintiffs challenged the single dose pentobarbital created by a compounding pharmacy. 783 F.3d 1089, 1096 (8th Cir. 2015).  There, the plaintiffs raised issues with the potency of compounded pentobarbital. *Zink*, 783 F.3d at 1099.  The allegation in *Zink* was that sub-potent pentobarbital could fail to cause death of the prisoner, leaving him unconscious with a lower rate of respiration, causing irreversible brain damage. *Id*. at 1099-1100.  Super-potent pentobarbital, on the other hand, could result in suffocation and difficulty breathing before losing consciousness. *Id*. at 1100.  The plaintiffs in *Zink* also alleged that potential contamination of the pentobarbital could result in painful allergic reactions in the blood or pulmonary embolism. *Id*.

There are many other cases involving Eighth Amendment challenges to a three drug lethal injection protocol.  Justice Sotomayor detailed some of the issues with the three drug lethal injection protocol in her dissent in *Arthur*:

> After Ohio administered midazolam during the execution of Dennis McGuire in January 2014, he "strained against the restraints around his body, and ... repeatedly gasped for air, making snorting and choking sounds for about 10 minutes." Johnson, Inmate's Death Called 'Horrific', Columbus Dispatch, Jan. 17, 2014, pp. A1, A10.
>
> The scene was much the same during Oklahoma's execution of Clayton Lockett in April 2014. After executioners administered midazolam and declared him unconscious, Lockett began to writhe against his

> restraints, saying, "[t]his s* * * is f* * *ing with my mind," "something is wrong," and "[t]he drugs aren't working." *Glossip*, 576 U.S., at ——, 135 S.Ct., at 2781–2782 (Sotomayor, J., dissenting).
>
> When Arizona executed Joseph Rudolph Wood in July 2014 using a midazolam-based protocol, he "gulped like a fish on land." Kiefer, Botched Execution, Arizona Dispatch, July 24, 2014, pp. A1, A9. A witness reported more than 640 gasps as Woods convulsed on the gurney for more than an hour and a half before being declared dead. *Ibid*.
>
> Finally, and just over a month after this Court stayed Thomas Arthur's execution, Alabama executed Ronald Bert Smith. Following the dose of midazolam, Smith "clenched his fist" and was "apparently struggling for breath as he heaved and coughed for about 13 minutes." Berman & Barnes, Alabama Inmate was Heaving, Coughing During Lethal–Injection Execution, Washington Post, Dec. 10, 2016, p. A3.

137 S. Ct. at 733 (Sotomayor, J. dissenting). Justice Sotomayor observed "what cruel irony that the method that appears most humane [lethal injection] may turn out to be our most cruel experiment yet." *Id*.

Upon review of the affidavits of Plaintiffs' experts detailing the problems with electrocution, this Court cannot conclude that Plaintiffs have made a *clear* showing that lethal injection by single dose pentobarbital would significantly reduce a substantial risk of severe pain. Those affidavits focus on electrocution's disadvantages. They do not address the arguments against lethal injection made by many prisoners challenging lethal injection as also being cruel and unusual. Rather, Plaintiffs cite to cases which upheld the constitutionality of lethal injection.

Essentially, Plaintiffs are asking the Court to compare two methods of execution both of which have been held to be constitutional by the United States Supreme Court. Plaintiffs "cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." *Glossip*, 576 U.S. at 877. At most, Plaintiffs have merely shown that lethal

9

injection by single dose pentobarbital is "slightly or marginally safer" than electrocution. Furthermore, "**traditionally accepted methods of execution - such as hanging, the firing squad, *electrocution*, and lethal injection - are [not] necessarily rendered unconstitutional as soon as an arguably more humane method like lethal injection becomes available**." *Bucklew*, 139 S. Ct. at 1125 (emphasis added). The stories detailing the horrors of executions, regardless of the method, underscore one important Eighth Amendment principle - the Eighth Amendment does not guarantee a painless death. Plaintiffs have failed to make a clear showing that lethal injection by single dose pentobarbital would significantly reduce a substantial risk of severe pain associated with death by electrocution, and likewise, have failed to make a clear showing of a likelihood of success on the merits of their Eighth Amendment claim.

Even assuming Plaintiffs had made a clear showing that lethal injection by single dose pentobarbital would significantly reduce a substantial risk of severe pain, Plaintiffs have failed to make a *clear* showing that single dose pentobarbital is a feasible and readily implemented alternative method of execution available to the State of South Carolina. "An inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law." *Bucklew*, 139 S. Ct. at 1129. "[A] prisoner may point to a well-established protocol in another State as a potentially viable option." *Id*. Here, Plaintiffs have pointed to the Federal Execution Protocol, which involves an intravenous injection of pentobarbital sodium. [Federal Execution Protocol, ECF No. 1-7]. However, simply because pentobarbital sodium is available to the Federal Bureau of Prisons or a small handful of states, does not mean that it is a feasible and readily implemented alternative method of execution available to the State of South Carolina. *See Glossip*, 576 U.S. at 878-79.

In an affidavit filed with the Supreme Court of South Carolina dated June 3, 2021, Bryan Stirling stated that the only statutorily approved method of execution available to the South Carolina Department of Corrections is electrocution.[2] On June 4, 2021, the Supreme Court asked Stirling "to provide an explanation as to why two methods of execution under the statute, lethal injection and firing squad, are currently unavailable." Stirling responded in a letter dated June 8, 2021 that:

> As to lethal injection, the South Carolina Department of Corrections (SCDC) has been unable, despite numerous and diligent attempts, to acquire the drugs necessary, in useable form, to perform a lethal injection. SCDC, like many other departments of corrections across the nation, has been repeatedly told, in no uncertain terms, by manufacturers of the drugs needed for a lethal injection that they will not sell SCDC such drugs. . . .
>
> Since all of SCDC's efforts to obtain drugs from a manufacturer have failed, SCDC has also explored having a licensed pharmacy and pharmacist compound the drugs. Those efforts have also been unsuccessful.

As noted in *Glossip* and restated in *Bucklew*, a State cannot be faulted for failing to use lethal injection drugs that it is unable to procure through good-faith efforts. *Bucklew*, 139 S. Ct. at 1125; *Glossip*, 576 U.S. at 878-79. In this case, it appears the State of South Carolina has attempted, in good faith, to obtain lethal injection drugs, including pentobarbital, but has been unable to acquire them. Because Plaintiffs have failed to make a clear showing that lethal injection by single dose pentobarbital is a feasible and readily implemented alternative method of execution available to the State of South Carolina, they have failed to show a likelihood of success on their

---

[2] This Court may properly take notice of proceedings in other courts. *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (federal courts may take judicial notice of proceedings in other courts). Additionally, at the hearing on this matter, counsel for Plaintiffs indicated they had no objection to this Court taking judicial notice of documents filed in the related proceeding before the South Carolina Supreme Court.

Eighth Amendment claim.

Legal precedent itself regarding the constitutionality of electrocution, the many legal challenges to lethal injection itself, and the apparent good faith efforts of the State of South Carolina to procure lethal injection drugs all support that Plaintiffs have failed to make a ***clear*** showing of a likelihood of success on the merits of their Eighth Amendment claim. Because Plaintiffs have failed to establish a clear likelihood of success on the merits of their Eighth Amendment claim, they are not entitled to injunctive relief. *See Henderson for Nat'l Lab. Rels. Bd.*, 902 F.3d at 439 (a district court need not consider all four *Winter* factors if one is clearly absent).

## Conclusion

For the reasons stated above, Plaintiffs [ECF Nos. 5 & 14] motions for temporary restraining order and preliminary injunction are **DENIED**.

IT IS SO ORDERED.

June 11, 2021                                s/ R. Bryan Harwell
Florence, South Carolina              R. Bryan Harwell
                                                    Chief United States District Judge